## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| RONDA THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20-cv-01137-TMP |
| | ) | |
| ANDREW SAUL, COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### ORDER AFFIRMING THE COMMISSIONER'S DECISION

Before the court is plaintiff Ronda Thompson's appeal from a final decision denying her application for disability insurance under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34. The parties have consented to the jurisdiction of the United States magistrate judge under 28 U.S.C. § 636(c). (ECF No. 11.) For the reasons below, the Commissioner's decision is AFFIRMED.

### I.    FINDINGS OF FACT

Plaintiff Ronda Thompson was born on February 1, 1963, and has suffered from lower back pain for many years. (R. at 35, 40-41.) Though she has not been employed since February 2012, she previously worked for Proctor & Gamble in various capacities beginning in 1984. (R. at 41, 43.) As part of one of her early jobs at Proctor & Gamble, Thompson would dump out 50-pound bags of

seasoning onto a platform. (R. at 42.) Because she was not tall enough, Thompson had to stand on her toes to be able to reach the platform, injuring her back in the process. (R. at 42.) She pursued a worker's compensation claim after suffering the back injury but was unable to procure a settlement. (R. at 42.) Instead, Proctor & Gamble paid for her medical care and provided her work restrictions until she recovered. (R. at 43.) Later in her career, she was transferred to the company's software department where she could sit down when necessary, though this job still required her to work long hours and occasionally to walk across the plant. (R. at 43.) In February of 2012, Proctor & Gamble decided that it could no longer accommodate her physical limitations and terminated her employment. (R. at 45.) She was not eligible for retirement benefits at the time of her termination. (R. at 45.)

Throughout this time, Thompson sought the treatment of Dr. David Bryan at the Jackson Clinic. (R. at 264-494.) Although the record only contains her medical records dating back to 2010, Thompson asserts that Dr. Bryan had been treating her for at least a decade leading up to the hearing.[1] (ECF No. 12 at 3-4.) On January

---

[1]Her medical records presented to the court include visits to the Jackson clinic (where Dr. Bryan practices) for a sore throat, colonoscopies, routine mammograms, splinters, and bee stings, among others. (R. at 264-494.) In addition to Dr. Bryan, her medical records show that she was seen by Dr. Amanda Reiter, Dr. Ronald Short, Dr. Misty Kelley, Dr. Donald Wilson, Dr. Luis Pagoaga, Dr. Kellie Wallace Wilding, Dr. Benny Houston, Dr. Dustin

28, 2019, Dr. Bryan submitted a Medical Source Statement of Ability to Do Work-Related Activities. (R. at 496-502.) In the statement, he opined that her abilities to lift things, to stand or walk, to sit, and to push or pull were all impacted by her impairments.[2] (R. at 496-97.) As a result, he opined that she was "unable to perform strenuous activity involving lower back [because] of pain." (R. at 497.) He also noted that she began to suffer from anxiety when she was in pain. (R. at 497.)

As for postural limitations, Dr. Bryan opined that she could occasionally climb things; that she could frequently balance; and that she could never crouch. (R. at 497.) He opined that she could only occasionally reach overhead because of her back pain. (R. at 498.) While Dr. Bryan opined that her ailments did not impair her ability to see or communicate, he noted that her pain made it medically reasonable to expect that she could not maintain attention and concentration for an entire eight-hour workday. (R. at 498.) This was in part because she was prescribed Tramadol and

---

Inman, Dr. Pamela Wells, Dr. Gary McBride, and Dr. John Guidi at the Jackson Clinic.

[2]According to the statement, he opined that she could only lift less than ten pounds, that she could stand or walk for at least two hours in a given work day, that she could sit less than six hours in a given work day, and that any pulling or pushing must be limited to her lower extremities. (R. at 496-97.) He reached these conclusions because of her chronic lower back pain that radiated down her legs and because of scar tissue that was visible from a previous myelogram. (R. at 497.)

Hydrocodone to manage her pain and in part because of tremors brought on by her anxiety. (R. at 498.) Additionally, he opined that she was unable to safely operate machinery because of her back pain and spasms. (R. at 499.) He also noted that her ability to understand, remember, and carry out instructions was not impacted by her ailment and that she was not restricted in her ability to interact with others. (R. at 500-01.)

Thompson applied for social security disability insurance benefits on December 14, 2016, alleging that she had been disabled since February 1, 2012. (R. 151-52.) The Social Security Administration ("SSA") denied Thompson's application initially and on reconsideration. (R. at 15.) At Thompson's request, a hearing was held before an Administrative Law Judge ("ALJ") on February 4, 2019. (R. at 29.) Thompson and Myrna Arevalo, a vocational expert, testified at the hearing. (R. at 28.) At the hearing, the ALJ discussed Thompson's work history with her. (R. at 42-46.) He expressed his concern that he could not find any diagnostic imaging studies in Thompson's file other than X-rays that did not show any bone, joint, or soft tissue abnormalities. (R. at 46.) Counsel for Thompson responded that she had received a contrasted myelogram when she was going through the worker's compensation process and that Dr. Bryant relied on this myelogram to make his assessment. (R. at 46-48.) Thompson testified that her most recent magnetic resonance imaging ("MRI") scan was in either 1996 or 1997. (R. at

49.) When Thompson told the ALJ that the myelogram showed scar tissue wrapping around her spine, the ALJ directed Thompson to submit copies of the myelogram, an MRI, or "any kind of diagnostic studies" to the court in order to support her claim. (R. at 49-50, 52.)

The ALJ next questioned Arevalo about Thompson's ability to work, given her alleged impairments. (R. at 53.) Arevalo initially classified Thompson's prior work experience as "information systems administrator." (R. at 55.) However, based on Thompson's testimony at the hearing (and the ALJ's opinion after listening to the testimony), Arevalo reassessed Thompson's prior work experience as "systems analyst." (R. at 58-59.) According to the Dictionary of Occupational Titles ("DOT"), "systems analyst" work is classified as sedentary with light performance. (R. at 59.) The occupation's only transferrable skills are basic computer skills, which Arevalo testified become outdated every three or four years. (R. at 59.) The ALJ then posed Arevalo with a hypothetical individual of Thompson's age, education, and prior work experience. (R. at 59.) The hypothetical individual had the following restrictions:

> can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; sit six hours; stand or walk six hours but would need to be able to alternate between sitting and standing or walking as required by the job at intervals of 30 minutes or more, okay. So they could sit longer, stand longer minimum 30 minutes. Occasional crawl; never climb ladders and scaffolds; would be

limited to occasional bilateral overhead reaching; should avoid concentrated exposure to unprotected heights and unprotected or dangerous moving parts.

(R. at 59-60.) Arevalo testified that the hypothetical individual would be able to continue working in his or her prior occupation. (R. at 60-61.) The ALJ then adjusted the hypothetical such that the individual was sedentary and was likely to be off task 5% to 10% of the time because of his or her pain. (R. at 61.) Arevalo testified that, under the revised restrictions, the individual would be able to return to his or her prior occupation as performed according to DOT guidance but not as is actually required for the job.[3] (R. at 61.) The ALJ then provided a third hypothetical, this time where the individual is off task for 15% of the time and the individual will likely miss an average of one and a half to two days from work each month due to the pain. (R. at 62.) Arevalo testified that an individual with these restrictions would not be able to perform any work in the United States economy. (R. at 62.) Following the hearing, on February 13, 2019, Thompson submitted an additional MRI that found a "homogeneous marrow signal," that "[t]he medullaris and paraspinal areas appear unremarkable[,]" that "[t]he disc spaces are preserved[,]" that "[t]here is no

---

[3]Arevalo testified that the ALJ's off task stipulation did not translate into the DOT guidance, thus accounting for the difference between what the DOT dictated the individual could perform and what Arevalo opined the individual could actually perform. (R. at 61.)

significant central or foraminal stenosis at the level scanned[,]" and that "MRI of the lumbar spine is felt to be within normal range."[4] (R. at 503.) Thompson did not provide a copy of the myelogram.

The ALJ issued a memorandum opinion on April 17, 2019, and found that Thompson had two severe impairments: lumbago and osteopenia. (R. at 17.) The ALJ found that these impairments caused more than a minimal limitation on Thompson's ability to perform work-related activities such that they constituted "severe" impairments under the Act. (R. at 18.) Additionally, the ALJ found that Thompson did not have any mental impairments. (R. at 18.) However, the ALJ found that neither impairment is an impairment listed in Appendix 1, Part 404, Subpart P of Regulation No. 4 and that neither impairment equaled in severity to any of the listed impairments. (R. at 18.) As such, the ALJ could not conclusively determine that Thompson was disabled. (R. at 18.)

Next, the ALJ considered Thompson's Residual Functional Capacity ("RFC") and determined that she was able to return to light work with the following restrictions:

> she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. The claimant can sit for 6 hours during an 8-hour day and stand and/or walk for 6 hours during an 8-hour day but would need to be able to alternate between sitting and standing and/or walking as required by the job at intervals of 30 minutes or more. She can occasionally crawl but never climb

---

[4]The February 2019 MRI was verified by Dr. Bryan. (R. at 503.)

> ladders and scaffolds. The claimant would be limited to
> occasional bilateral overhead reaching. She should avoid
> concentrated exposure to hazards such as unprotected
> heights and dangerous moving parts and machinery.

(R. at 18.) The ALJ reached this conclusion by, first, determining
if Thompson suffered from an underlying medically determinable
impairment and, second, determining whether any impairment could
reasonably be expected to produce Thompson's alleged symptoms. (R.
at 18-19.) While the ALJ found that Thompson's medical record
included a history of treatment for back pain, he determined that
her pain was inconsistent with her self-reported day-to-day
activities.[5] (R. at 19.) The ALJ then considered Thompson's
subsequent visits to the Jackson clinic, where she was treated for
miscellaneous ailments but often did not complain of any back pain,
and noted that her musculoskeletal and physical exam findings were
"essentially normal" during visits to the clinic from 2014 through
2016.[6] (R. at 19-20.)

---

[5]Specifically, the ALJ noted that, "[i]n an Agency questionnaire,
the claimant alleged that she could not stand, walk, or sit for
any prolonged period due to back pain. She stated that she had no
problems with performing self-care activities or with providing
care for the family pet. She alleged that she had difficulty
sleeping and has to get up several times a night due to pain. The
claimant indicated that she could prepare at least simple meals
and could carry out light household chores. She was able to drive
a car, shop in stores, and manage her finances. The claimant
reported that she read, watched television, and went out to eat
with her husband." (R. at 19 (citing R. 190-97.))

[6]The ALJ noted that her 2015 exam revealed "some para lumbar muscle
tenderness to palpitation and limited range of motion in the low

- 8 -

The ALJ next found that Thompson was diagnosed with lumbago during a visit to the Jackson Clinic in August 2017, though "[p]hysical exam findings continued to show only some para lumbar muscle tenderness to palpation and limited range of motion in the low back." (R. at 20.) The ALJ also considered Thompson's next two visits to the clinic – in April and October 2018 – and concluded that "[t]here was no significant degenerative process noted. The findings were considered a normal lumbar spine." (R. at 20.) The ALJ further supported this conclusion by considering the February 2019 MRI, which revealed that her lumbar spine was "essentially normal." (R. at 20.)

After considering Thompson's medical history, the ALJ turned to the physician opinion evidence in the record. First, the ALJ found that Dr. Bryan's opinion was somewhat consistent with the record as a whole and deserving of partial weight. (R. at 20.) Specifically, the ALJ agreed with Dr. Bryan's opinion as to any limitations regarding postural movements, but he found that the limitations regarding lifting, carrying, and sitting were based "more on the subjective complaints of the claimant and not on objective evidence." (R. at 20.) As for the State agency's consulting physicians, Dr. Thomas Thrush and Dr. Michael Ryan, the

---

back" and that the 2016 exam showed no changes except for "tight hamstrings." (R. at 20.)

ALJ found that their opinions – which were that Thompson's "Spine Disorders" were "Non Severe" – were inconsistent with the record as a whole. (R. at 20, 68, 76.) The ALJ afforded them little weight because they did not personally examine or interview Thompson and did not have the benefit of a complete record. (R. at 20.) Based on the above considerations, the ALJ found that Thompson's medically determinable impairments could reasonably cause her alleged symptoms, but that her assertions as to the "intensity, persistence and limiting effects of these symptoms" were inconsistent with the record and objective medical evidence. (R. at 21.) After considering the vocational expert's testimony, the ALJ found that Thompson was capable of returning to work as a systems analyst. (R. at 21.) The ALJ concluded his memorandum by finding that Thompson was not under a disability and dismissed her request for disability insurance benefits. (R. at 21-22.) Subsequently, the Appeals Counsel denied Thompson's request for review on May 1, 2020. (R. at 1.)

On June 24, 2020, Thompson filed the instant action. (ECF No. 1.) In her brief filed November 16, 2020, Thompson argues that the ALJ's decision cannot stand because he did not give Dr. Bryan's opinion controlling weight and, instead, substituted his own opinions to evaluate her claim. (ECF No. 12) Additionally, Thompson argues that the ALJ's decision is flawed because there were multiple procedural and factual errors. (ECF No. 12.) As a result,

Thompson argues that the ALJ erred by failing to find that her physical impairments were severe and that, consequently, there is not substantial evidence to support the ALJ's decision that she is not disabled. (ECF No. 12.) The Commissioner filed a brief in response on December 16, 2020. (ECF No. 13.)

## II.   CONCLUSIONS OF LAW

### A.   Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health &

Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically

- 12 -

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to Social Security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, & 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), & 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is

- 14 -

not disabled at any point in this sequential analysis. 20 C.F.R.
§ 404.1520(a)(4).

## C.  **Physician Opinions**

Thompson argues that remand is necessary because the ALJ gave
only partial weight to the opinion of Dr. Bryan, Thompson's primary
care physician. When an ALJ formulates an RFC finding, "the ALJ
evaluates all relevant medical and other evidence and considers
what weight to assign to treating, consultative, and examining
physicians' opinions." Eslinger v. Comm'r of Soc. Sec., 476 F.
App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3));
see also Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 514 (6th Cir.
2010). The Sixth Circuit has stated that:

> [a]n opinion from a treating physician is "accorded the
> most deference by the SSA" because of the "ongoing
> treatment relationship" between the patient and the
> opining physician. A nontreating source, who physically
> examines the patient "but does not have, or did not have
> an ongoing treatment relationship with" the patient,
> falls next along the continuum. A nonexamining source,
> who provides an opinion based solely on review of the
> patient's existing medical records, is afforded the
> least deference.

Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir.
2012) (quoting Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875
(6th Cir. 2007)) (internal citations omitted). A treating source's
opinion is due controlling weight if it is "well-supported by
medically acceptable clinic and laboratory diagnostic techniques
and is not inconsistent with the other substantial evidence in

[the claimant's] case record."[7] 20 C.F.R. § 416.927(c)(2); Turk v. Comm'r of Soc. Sec., 647 F. App'x 638, 640 (6th Cir. 2016).

If the ALJ discounts the weight normally given to a treating source opinion, the ALJ must explain his or her decision. 20 C.F.R. § 416.927(c)(2). "Where an ALJ does not give controlling weight to a treating source opinion, [he or she] weighs that opinion in light of the regulations, using the factors in 20 C.F.R. § 404.1527(c)(2)-(6)."[8] Perry v. Comm'r of Soc. Sec., 734 F. App'x 335, 339 (6th Cir. 2018). These factors are: "the length, nature, and extent of the treatment relationship; the supportability of the physician's opinion and the opinion's consistency with the rest of the record; and the physician's specialization." Steagall v. Comm'r of Soc. Sec., 596 F. App'x 377, 380 (6th Cir. 2015) (citing Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004)). "The ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide 'good reasons' for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion." Biestek v.

---

[7]"[A non-binding] Social Security Ruling explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent . . . with other substantial evidence in the case record.'" Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996)).

[8]The same factors can now be found at 20 C.F.R. § 416.927(c).

Comm'r of Soc. Sec., 880 F.3d 778, 785 (6th Cir. 2017) (citing Francis v. Comm'r of Soc. Sec., 414 F. App'x 802, 804-05 (6th Cir. 2011); Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406-07 (6th Cir. 2009); and 20 C.F.R. § 404.1527(c)(2)). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Dugan v. Comm'r of Soc. Sec., 742 F. App'x 897, 902-03 (6th Cir. 2018) (quoting Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013)); see also SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

It is undisputed that Dr. Bryan is a treating physician with an extensive history treating Thompson's various ailments. As such, Dr. Bryan's opinion is controlling if it is supported by objective medical evidence, consistent with other substantial evidence in the record, and if "there is [not] substantial evidence to the contrary." Wilson, 378 F.3d at 544; Loy v. Sec'y of Health & Human Servs., 901 F.2d 1306, 1308-09 (6th Cir. 1990); C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In his memorandum, the ALJ elected to only afford Dr. Bryan's opinion partial weight because it was "somewhat consistent with the record as a whole." (R. at 20.) In doing so, he agreed with Dr. Bryan's assessment of Thompson's "limitations related to postural movements, overhead reaching, and in the limitations related to hazards," but found "the restrictive

- 17 -

limitations related to lifting, carrying, and sitting to be based more on the subjective complaints of the claimant and not on objective evidence." (R. at 20.); Bass, 499 F.3d at 511 (holding that an ALJ is not inherently bound by a treating physician's opinion because "a conclusion of disability is reserved to the Secretary . . . no 'special significance' will be given to opinions of disability, even if they come from a treating physician."). Elsewhere in his opinion, the ALJ discussed at length Thompson's medical history for back pain and the results of diagnostic tests in the record. Specifically, the ALJ found that X-Rays and MRI scans of her lumbar spine "were normal" and that "[p]hysical examination findings were consistent with only muscle tenderness and some limited range of motion." (R. at 21.) See Crum v. Comm'r of Soc. Sec., 660 F. App'x 449, 457 (6th Cir. 2016) ("[T]he ALJ did not reproduce the list of these treatment records a second time when she explained why [the treating physician]'s opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.") (citing Forrest v. Comm'r of Soc. Sec., 591 F. App'x 359, 366 (6th Cir. 2014)).

The ALJ also noted that Dr. Bryan never recommended physical therapy or any treatment other than oral medications. (R. at 20.) The Sixth Circuit has instructed that an ALJ can "properly discount[] the opinion[] of [a] treating physician[] where the opinion[] [is] incompatible with the claimant's generally

- 18 -

conservative course of treatment or activities of daily living."
O'Brien v. Comm'r of Soc. Sec., 819 F. App'x 409, 417 (6th Cir.
2020) (citing Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 631
(6th Cir. 2016); Lester v. Soc. Sec. Admin., 596 F. App'x 387, 389
(6th Cir. 2015); and Turk, 647 F. App'x at 640); see also Kepke,
636 F. App'x at 631 ("[T]he records indicate Kepke received only
conservative treatment for her ailments, a fact which constitutes
a 'good reason' for discounting a treating source opinion."). This
is not a case where the ALJ completely failed to mention or
consider the treating physician in making his RFC, see Bowen v.
Comm'r of Soc. Sec., 478 F.3d 742, 747-49 (6th Cir. 2007), or
rejected a treating physician's opinion without providing any
justification for doing so, see Hall v. Comm'r of Soc. Sec., 148
F. App'x 456, 465-66 (6th Cir. 2005). Rather, the ALJ compared Dr.
Bryan's opinion with the remainder of the record and determined
that it was inconsistent and not worthy of controlling weight.

Thompson is correct in arguing that the ALJ did not
systematically address each factor listed in 20 C.F.R. 404.1527.
However, Thompson's reliance on Cole v. Astrue, 661 F.3d 931 (6th
Cir. 2011), for the proposition that failing to explicitly weigh
each factor is automatically grounds for remand is misplaced. In
Cole, the Sixth Circuit found that the ALJ not only failed to
consider the regulatory factors, but that he failed to assign any
particular weight at all to the treating physician or provide any

reasons for disregarding the treating physician. Id. at 938. In contrast, here the ALJ stated that he was giving Dr. Bryan's opinion partial weight because it was not supported by objective medical evidence and was inconsistent with the rest of the record, ultimately explaining (albeit briefly) why and how the opinion did not align. See Keeler v. Comm'r of Soc. Sec., 511 F. App'x 472, 473 (6th Cir. 2013) (holding that there was substantial evidence to justify giving decreased weight to a treating physician's opinion where the opinion was internally inconsistent, based on subjective complaints, and contradicted by the record). Further, the ALJ referred to Dr. Bryan as a treating physician and discussed Thompson's extensive medical history at the Jackson Clinic. Thus, the only factor that he did not directly address was Dr. Bryan's specialization as a physician, which this court has held is not, on its own, a reason to find reversible error. See Lucy v. Saul, No. 19-1083-TMP, 2020 WL 1318803, at *6 (W.D. Tenn. Mar. 20, 2020).

Furthermore, the ALJ gave Thompson additional time to supplement the record with medical evidence to support Dr. Bryan's opinion.[9] Thompson supplemented the record by providing an MRI

---

[9]Testimony at the hearing went as follows:

> ALJ: I understand how to read these records, and, and so what I'm telling you is even though you didn't ask for it, I'm going to give you 30 days. I want to do some –
>
> Counsel for Thompson: I'll do that.

taken after the hearing that did not support a finding of disability. Though Thompson asserts that it was error for the ALJ to analyze the 2019 MRI without the assistance of a medical expert, this argument is without merit. See McHenry v. Berryhill, 911 F.3d 866, 871 (7th Cir. 2018) ("An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments."). Unlike McHenry, where the Seventh Circuit reversed an ALJ's decision because he disregarded an MRI purporting to show "severe nerve root compression" without consulting a medical expert, here the ALJ considered written findings from the MRI that were verified by Dr. Bryan and stated that Thompson's spine was both "normal" and "unremarkable." Id.; see also Severson v. Saul, No. 19-CV-463, 2020 WL 1150446, at *5 (E.D. Wisc. Mar. 10, 2020) (finding McHenry inapplicable because "the ALJ . . . did not interpret raw medical data to conclude that an imaging study was consistent with his assessment").

---

> ALJ: – investigation and see if you can come up with the MRI, the myelogram, any kind of diagnostic studies that are going to support that. I even invite you that if you can get it done and you can get her an MRI, an open MRI at the Jackson Clinic that'll help document it to show me because I don't see enough evidence really for me to give great weight to what Dr. Bryant says.

(R. at 52-53.)

An ALJ satisfies his or her duty where the opinion gives "the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion." Francis, 414 F. App'x at 805 (citing Friend, 375 F. App'x at 551). The ALJ has done so here and, thus, has not committed reversible error.[10] See Biestek, 880 F.3d at 786 (citing Wilson, 378 F.3d at 544).

## D. Severe Impairments

Thompson also argues that the ALJ erred because he did not classify her spinal tissue scarring as a "severe impairment" at Step Two of the evaluation process. The Sixth Circuit has held that it is not reversible error for an ALJ to decline to classify an additional impairment as severe, provided "the ALJ considers

---

[10]It is unclear from the face of Thompson's brief whether she is also asserting that the ALJ erred in how he elected to weigh the two non-examining physician opinions. For the sake of completeness, the undersigned finds that the ALJ did not err in how he considered Dr. Thrush's and Dr. Ryan's opinions. Despite the ALJ stating that he gave Dr. Thrush and Dr. Ryan little weight because they were "inconsistent with the record as a whole" and because they did not have an opportunity to examine Thompson or the benefit of a complete record, Thompson appears to assert that the ALJ gave the state agency physicians undue weight because he determined that Thompson was not disabled; the same overall conclusion that Dr. Thrush and Dr. Ryan reached. (R. at 20.) However, both physicians opined that Thompson's "Spine Disorders" were not severe impairments, while the ALJ found that Thompson suffered from two severe impairments and that Thompson's disability claims failed after an RFC assessment in Step Four. (R. at 17, 68, 76.) Thus, the ALJ's finding of not disabled was not, as Thompson argues, a mere "accept[ance of] any DDS form opinion without question," but was rather a finding based on evidence from throughout the record. (ECF No. 12 at 16.)

all of the individual's impairments." Kirkland v. Comm'r of Soc. Sec., 528 F. App'x 425, 427 (6th Cir. 2013); see also Kestel v. Comm'r of Soc. Sec., 756 F. App'x 593, 597 (6th Cir. 2018) (holding that once the ALJ determined one of the claimant's impairments was severe, it was "unnecessary" to decide whether there was any error in classifying a separate impairment as non-severe). At Step Two, the ALJ found that Thompson suffered from two severe impairments and proceeded to advance to the next step. Thus, the ALJ did not commit reversible error. See Hedges v. Comm'r of Soc. Sec., 725 F. App'x 394, 395 (6th Cir. 2018) (per curiam) (if an ALJ finds at least one impairment to be severe and goes on to consider all of the impairments in the remaining steps, "whether the ALJ characterized [claimant's] . . . impairments as severe or non-severe at step two is 'legally irrelevant' and does not amount to error.") (quoting 20 C.F.R. § 404.1545(e) and Anthony v. Astrue, 266 F. App'x 451, 457 (6th Cir. 2008)); Overton v. Comm'r of Soc. Sec., No. 16-2444, 2018 WL 3458495, at *5 (W.D. Tenn. July 18, 2018) ("Because the ALJ is [subsequently] required to consider all of a claimant's impairments (severe and non-severe), '[t]he fact that some of [claimant's] impairments were not deemed to be severe at Step Two is therefore legally irrelevant.'" (quoting Anthony, 266 F. App'x at 457)).

It would be a separate issue if the ALJ had neglected to consider any of Thompson's impairments altogether when making his

RFC determination. See Kirkland, 528 F. App'x at 427. When making an RFC determination, "the ALJ must consider limitations and restrictions imposed by all of [the] individual's impairments, even those that are not severe." Fisk v. Astrue, 253 F. App'x 580, 583 (6th Cir. 2007); see also 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."). While he did not refer to the scarring by name, the ALJ considered Thompson's history of back pain at great length in making his RFC assessment, and even acknowledged that her impairments "could cause some limitation of function." (R. at 21.); see Miller v. Comm'r of Soc. Sec., 524 F. App'x 191, 194 (6th Cir. 2013) (holding that "[t]o the extent that the ALJ erred by failing to find that Miller's cognitive and personality deficits constituted severe impairments, the error was harmless because the ALJ adequately took into account the effects of those deficits" when making his RFC assessment); Ferguson v. Berryhill, No. 18-cv-01152-TMP, 2019 WL 1569351, at *4 (W.D. Tenn. Apr. 11, 2019) (finding that it was not reversible error for an ALJ to not classify an impairment as severe where he considered the claimant's alleged impairments throughout his decision). Indeed, the ALJ noted that Thompson exhibited "some limited range of motion in the low back and hips" and that she suffered from "mild tenderness to

palpation involving the para lumbar muscles and over the lumbar spine" dating back to 2010. (R. at 21.) This is consistent with Dr. Bryan's note that Thompson suffered from "Scar tissue lower back from previous myelogram – tender at times." (R. at 497.). Further, when the ALJ left the record open so that Thompson could submit diagnostic imaging to document her scarring, Thompson elected to submit a new MRI and not a copy of the myelogram that allegedly showed the scarring. (R. at 503.) Thus, this is also not a basis for the court to remand Thompson's case.

**E.  Appearances of Impropriety**

As for Thompson's assertion that the ALJ's decision was objectively unreasonable, this argument is also not a reason for remand. Thompson argues that the ALJ's decision was objectively unreasonable because her case was transferred from Memphis to Chattanooga, where the ALJ treated her unfairly. Thompson argues that the ALJ made multiple procedural and factual errors that show bias, such as misstating the date the claim was filed, ignoring the scarring diagnosis, replacing medical opinions with his own, giving undue weight to non-examining physician opinions, and referring to the vocational expert as "his" expert.

"[D]ue process requires that any hearing afforded [a Social Security disability] claimant be full and fair." Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995). This standard is violated where a claimant is deprived of the opportunity to present evidence

to an ALJ in support of her claim or where the ALJ exhibits bias or animus against the claimant. Id. at 902-03. It is presumed that a hearing officer is unbiased, and "[i]t is only after a petitioner has demonstrated that the decisionmaker 'displayed deep-seated and unequivocal antagonism that would render fair judgment impossible' that the presumption is rebutted, the findings set aside, and the matter remanded for a new hearing." Keith v. Barnhart, 473 F.3d 782, 788 (7th Cir. 2007) (quoting Liteky v. United States, 510 U.S. 540, 556 (1994)); see also Wells v. Apfel, No. 99-5548, 2000 WL 1562845, at *5-6 (6th Cir. Oct. 12, 2000); Long v. Comm'r of Soc. Sec., 375 F. Supp. 2d 674, 677-78 (W.D. Tenn. 2005).

"Bias cannot be inferred from a mere pattern of rulings by a judicial officer, but requires evidence that the officer had it in for the party for reasons unrelated to the officer's view of the law." Keith, 473 F.3d at 789 (quoting McLaughlin v. Union Oil Co., 869 F.2d 1039, 1047 (7th Cir. 1989)); see also Perschka v. Comm'r of Soc. Sec., 411 F. App'x 781, 788 (6th Cir. 2010) ("An adverse ruling alone is not enough to support a finding of bias."); Marozsan v. United States, 90 F.3d 1284, 1290 (7th Cir. 1996) ("[J]udicial rulings alone almost never constitute valid basis for a bias or partiality motion"). Further, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge" unless "they reveal

such a high degree of favoritism or antagonism as to make fair judgment impossible." Liteky, 510 U.S. at 555. "Stated differently, 'any alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference.'" Collier v. Comm'r of Soc. Sec., 108 F. App'x 358, 363-64 (6th Cir. 2004) (citations omitted).

In this case, Thompson has not demonstrated any bias on the part of the ALJ or that the decision-making process was objectively unfair in any manner. Thompson's allegations of bias appear to be, at least in part, speculation that because her case was transferred from Memphis to Chattanooga she was effectively denied the right to a fair hearing. While the ALJ does refer to the vocational expert as "his" expert during the hearing and the ALJ was, perhaps, informal at times in the hearing, Thompson has not pointed to any evidence in the record suggesting that the ALJ was hostile to her because of where her case began or, for that matter, any other reason. See id. at 364 ("While some of the comments made by the ALJ were both unnecessary and inappropriate, the court does not discern any basis on which to conclude that he was biased in a manner which affected the outcome of the hearing."); Howard v. Astrue, No. 3:09cv00179, 2010 WL 1433438, at *5 (S.D. Ohio Mar. 17, 2010) (concluding that if it would require the court to make an inference that an ALJ was biased, then the evidence "is

insufficient to overcome the presumption of the ALJ's impartiality").

Nor does Thompson's assertion that the ALJ made factual and procedural errors in analyzing and weighing the evidence indicate that the hearing was fundamentally unfair. Courts within the Sixth Circuit are clear that merely pointing to disagreements with how the ALJ construed evidence in the record and weighed physician opinions to reach his or her decision is insufficient to establish bias or a due process violation. See, e.g., Shepard o/b/o Shepard v. Comm'r of Soc. Sec., No. 2:17-cv-10197, 2018 WL 1833513, at *10 (E.D. Mich. Jan. 11, 2018) ("[A]ssigning a claimant's non-examining source like Dr. Heinemann more weight than examining or treating sources — or, for that matter, reaching any conclusion adverse to a claimant — does not imply any bias or deprivation of due process against that claimant."); Courtney v. Astrue, No. 3:10-CV-342, 2011 WL 3511008, at *9 (E.D. Tenn. Aug. 10, 2011) ("[P]laintiff's contention that the ALJ weighed evidence in a way he disagreed with does not constitute bias."); Edwards v. Barnhart, 383 F. Supp. 2d 920, 928 (E.D. Mich. 2005) ("Plaintiff sets forth no specific evidence of bias other than a unfavorable decision, which is insufficient to support such an argument."). Thompson's argument that the hearing was objectively unreasonable is meritless.

### III. CONCLUSION

As discussed above, there is substantial evidence supporting the ALJ's decision. The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

March 5, 2021
Date